## No. 12,264.

### OUACHITA NATIONAL BANK VS. JULIUS WEISS & CO.

The shipment to a factor unaccompanied with any instructions or agreement as to the application of proceeds, will subject the property to the factor's privilege for the debt due to him by the consignor, and this privilege takes effect under the statute from the time the bill of lading is delivered to the carrier, and under the Code when the property is received. Civil Code, Art. 3247; Act No. of 1882; Act No.    of 1874.

This privilege can not be defeated by an order accompanied by the bill of lading given by the consignor after the privilege of the consignee has attached.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

---

*Harry H. Hall* for Plaintiff, Appellee.

---

*Farrar, Jonas & Kruttschnitt* and *E. T. Lambkin,* for Defendants, Appellants.

---

Argued and submitted on briefs December 18, 1896.

Opinion handed down January 18, 1897.

Rehearing refused April 26, 1897.

---

The opinion of the court was delivered by

MILLER, J. The plaintiff claims to have advanced J. W. Parks, a planter in the parish of Ouachita, to enable to make his crop of 1894; that one hundred and twenty-five bales of cotton, part of the crop, was shipped to defendants for the purpose of paying plaintiff, to whom the shipper transferred the bill of lading and gave an order on defendants for the cotton; on the refusal of defendants to deliver, the plaintiff sued for the cotton or its proceeds, to the extent of the amount advanced. The defendants' answer avers that they have the factor's lien on the cotton to pay one-half the indebtedness of the planting firm of which the shipper was a member; and the answer avers the tender to plaintiff of the surplus of the pro-

ceeds after applying one-half of the proceeds to the privileged debt due defendants. From the judgment in plaintiff's favor, defendants appeal.

The firm of Lee & Parks were indebted to defendants for advances in the year 1894. J. W. Parks, the shipper of the one hundred and twenty-five bales, and a member of that firm, when the debt of his firm to defendants had reached a certain amount, obtained from defendants for his firm a further advance. He executed a paper stipulating that two hundred bales should be shipped defendants in addition to four hundred bales of cotton his firm had agreed to ship them. Lee & Parks did ship four hundred and ten bales, and Parks made two shipments of two hundred bales of his cotton, of which the one hundred and twenty-five bales form part. After crediting the proceeds of all the cotton shipped by Lee & Parks and half the proceeds of that shipped by Parks, there still remains a large debt due them by Lee & Parks.

The plaintiff, the Ouachita National Bank, in support of their claim to the proceeds of the one hundred and twenty-five bales, have proved the loan to Parks by the bank of three thousand dollars, and we think it was the understanding the bank was to be paid from Parks' crop of 1894. We do not understand the bank claims any lien arising from this loan. The one hundred and twenty-five bales were shipped to defendants with no instructions, under a bill of lading stating Parks was the shipper and exhibiting the shipping marks of his firm, L. & P. But after the shipment, the bank reminded him of his debt, and he then sent the triplicate bill of lading and the order on defendants for the delivery. The order is dated 13th March, 1895, more than thirty days after the cotton came into defendants' hands. The bank stands before us with such right as the order and accompanying bill of lading can give, and as we appreciate the argument it seeks to maintain, the cotton came into defendants' hands charged with the payment of the bank's debt. The bank produces the testimony of Parks that he owed the bank nothing individually, that the shipment was not to pay his firm debt, but to pay the bank, and he testifies the bank knew it. The bank also offered the testimony of Lee that at defendant's instance he solicited the shipment to them of Parks' cotton, to enable them to make commissions, and that at defendants' request he asked Parks after the shipment to consent to the application of his cotton to payment of his firm's pebt, which he refused.

The defendants to maintain their right to apply one-half the proceeds of the one hundred and twenty-five bales of cotton to pay the debt of Lee & Parks rely on the paper containing the recital of the loan of sixteen hundred dollars by defendants, in consideration of which there is the agreement to ship two hundred bales in addition, the paper states, to the four hundred bales agreed to be shipped by Lee and Parks. The paper begins: " We, the undersigned, J. W. Parks of Lee & Parks in consideration of, agree," etc. The testimony of Parks is, the words "of Lee & Parks " was not in it when executed. The testimony of defendants' witness is, he does not know whether or not the paper contained the words, and in answer to the suggestion that the paper bore the impress of being copied, the witness stated, if copied, the press copy would be furnished, but none was furnished.  But it was not questioned the paper bears Parks' individual signature.  In addition the defendants have produced the testimony of a witness that about the 11th of March, a short time after the shipment, Parks expressed his willingness that defendants should get the proceeds in controversy, and the testimony of another witness that in the negotiation between defendants and Parks, it was distinctly understood he was to ship the cotton " pledged," to use the expression of the witness, to pay the firm's indebtedness to defendants, and this witness also testifies that later, Parks promised the shipment followed by that of two hundred bales, including the one hundred and twenty-five bales in controversy.

The appropriation by the shipper of the property or its proceeds to pay the debt he indicates made known to the consignee, who assents to such appropriation expressly or by receiving the consignment under the instructions as to its disposition, precludes the consignee from asserting any claim to defeat the purpose of the consignment.   The decision in 43 An., p. 1, Bank vs. Mayer & Co., cited by plaintiff, is a type of others affirming this species of dedication of property shipped.   If the paper signed by Parks stipulating for the shipment of two hundred bales is to have the force claimed for it by defendants, and if the other testimony offered by them is to be accepted, they had the right to apply the cotton to pay their debt.   Their entire conduct evinces insistence on that right.   We have the statement from plaintiff's witness, Lee, the cotton was not shipped to pay the debt of Lee & Parks.   It was Parks, not Lee, that made the shipment, and the witness' statement

as to the purpose of the shipment seems to be his deduction. Parks' testimony that the shipment was to pay the bank's debt, and that defendants knew it, is not accompanied with any testimony how they knew it. It does not appear any communication was made to them before the shipment that it was for the bank. On the contrary, the shipment was made with no direction whatever accompanying the shipment. It was not until a month after the cotton was received and had become subject to plaintiff's privilege, if that privilege existed, that an order was presented to defendant to deliver the cotton. It seems to us, in the condition of this record, there is no basis on which we can hold this cotton came into defendants' hands under directions, express or implied, to appropriate the proceeds to the bank's debt. This case is in marked contrast in this respect with that cited by plaintiff. In that case, before the shipment the consignee was presented with the bills drawn against the shipment, received it with full knowledge of its dedication, and it was held he could not, after receiving the property under the mandate for its disposition, set up his factor's privilege to defeat the disposition proposed by the consignor, and in effect assented to by the consignee. Here the property comes into defendants' hands with no dedication whatever to interfere with the operation of the privilege of defendants, if the law gave any.

The plaintiff denies that defendants had any privilege. If that contention can be maintained the order of the shipper must prevail. The statutes and the Code gave the factor the privilege on the property consigned to him for the payment of the debt of the consignor; the statutes from the date the bill of lading is placed in the mail or in the hands of the carrier; the Code when the consignment is received. Acts 1874, 1882, Nos. —; Art. 3247, C. C. Giving due weight to the testimony of Lee that the cotton was not shipped to pay the debt to defendant, it remains he was not the shipper, nor does he testify to any communication to defendants of the purpose of the shipment, nor does he undertake to give testimony of the negotiation of Parks with defendants when he obtained the loan from the defendants for his firm and executed the paper for the shipment of two hundred bales, on which defendants rely. It is true Lee also testifies to the refusal of Parks to assent to the application of his cotton to pay the firm's debt. This was after the shipment. If defendants had the right to make that application his refusal of

consent did not diminish that right. The statement from Parks that defendants knew the shipment was for the bank's debt must be taken in conection with the fact that neither he nor the bank or any other person ever made such communication to the defendants, and the additional fact that no instructions accompanied the shipment. On the other hand there is evidence carrying, we think, great persuasive force that the shipment was designed, when it was made, to pay the indebtedness to Lee & Parks. The paper executed when the sixteen hundred dollar loan was obtained, if read without the words claimed to have been added, still must be deemed significant on this branch of the controversy. The loan of sixteen hundred dollars to the firm, in consideration of which the obligation expressed to ship two hundred bales of cotton, carries the inference the firm's indebtedness was to be repaid from the cotton. If it was Parks' cotton we can not suppose defendants would advance only to get commissions, the sole reason, according to defendants' witnesses, for Parks' shipments to defendants. No explanation comes from Parks or from any witness who was to send forward the two hundred additional bales, if he was not to be shipper. He did ship that precise number, of which the one hundred and twenty-five in controversy are part; the marks on the cotton are L. & P., and there are no instructions of any purpose other than that defendants would naturally draw from their negotiation with him. We have, then, this paper stipulating the loan; the obligation to ship two hundred bales, and read with or without the words "Lee & Parks," indisputably signed by Parks individually, is followed by his shipment of his individual cotton, making up the six hundred bales the paper stipulated were to be shipped. It is extremely difficult to resist the conclusion on this phase of the record that the shipment was to pay the debt of Parks, made up in part of the sixteen-hundred-dollar loan he had obtained for his firm on the faith of the promised shipment recited in the paper signed by him. We have, too, placed before us the testimony of Parks' expressed willingness the defendants should have the proceeds, and the testimony of another of defendants' clerk or agent who, we infer, conducted the negotiation with Parks, and that witness testifies positively it was distinctly understood with Parks that he was to ship his cotton to pay the indebtedness to which defendants have applied the proceeds. We think the conclusions upon the testimony is his shipment

37

fulfilled that understanding; that the cotton shipped to pay the defendants' debt was subject to their privilege the moment it reached their hands, and that privilege could not be defeated by Parks' order given a month later.

It is therefore ordered, adjudged and decreed that the judgmen' of the lower court be avoided and reversed, and it is now ordered, adjudged and decreed that the defendants be decreed to have a privilege as factors on the one hundred and twenty-five bales of cotton, or the proceeds, to pay one-half the indebtedness of Lee & Parks ($2914.63), two thousand nine hundred and fourteen dollars and sixty-three cents, the surplus of the proceeds to be paid to plaintiff, and the prayer for damages by the defendants be rejected and that plaintiff pay costs.